CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

DEC 06 2019

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| EDWARD KOVARI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No.: 5:18-cv-00070 |
| v. | ) |
| | ) By: Hon. Michael F. Urbanski |
| BREVARD EXTRADITIONS, LLC, | ) Chief United States District Judge |
| d/b/a U.S. Prisoner Transport, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

This matter comes before the court on defendants Brevard Extraditions, LLC, Prisoner Transportation Services of America, LLC, and Prisoner Transportation Services, LLC's ("defendants") second motion for bifurcation, ECF No. 116, motion for partial summary judgment, ECF No. 118, and motion to vacate United States Magistrate Judge Joel C. Hoppe's discovery order, ECF No. 134. Plaintiff Edward Kovari ("Kovari") has responded to all motions, and the court heard argument on November 22, 2019. ECF No. 150. For the reasons explained below, the court **DENIES** defendants' motion to bifurcate, ECF No. 116, and motion for partial summary judgment, ECF No. 118. The court **GRANTS in part and DENIES in part** defendant's motion to vacate the discovery order. ECF No. 134.

I.

The court will first address defendants' second motion to bifurcate, filed on September 6, 2019. The court will then address defendants' motion for partial summary

judgment, filed the same day. Finally, the court will address defendant's motion to vacate the discovery order, filed on October 2, 2019.

A.

Federal Rule of Civil Procedure 42(b) states that courts may order separate trials on separate issues or claims for a variety of reasons, including convenience, avoiding prejudice, or expediting proceedings. The decision to bifurcate is within the discretion of the district court. Bowie v. Sorrell, 209 F.2d 29, 51 (4th Cir. 1953). "When deciding whether issues should be separately tried, trial courts must ensure that a litigant's constitutional right to a jury is preserved." Shum v. Intel Corp., 499 F.3d 1272, 1276 (Fed. Cir. 2007).

B.

Though trial has already been bifurcated into a liability and compensatory damages portion, followed by a punitive damages portion, ECF No. 88, defendants have moved to bifurcate again to separate evidence pertinent to Kovari's 42 U.S.C. § 1983 claims from evidence pertinent to his tort claims. Defendants request the court order trial be conducted in three separate phases, during which a jury will, in order: (1) decide liability for Kovari's claims in Count II, Count III, and Count IV; (2) decide liability for Kovari's claim in Count I; and (3) address punitive damages, if any. Defendants argue that Kovari's § 1983 claim "is entirely separate, irrelevant, and impermissible when compared to what is required to prove" his state law tort claims. While the theory of respondeat superior may be permissible to establish a cause of action for negligence, gross negligence, and intentional infliction of emotional distress, defendants assert that it cannot be used to impose liability on an inactive defendant (like an employer) pursuant to § 1983. See Jones v. Chapman, No. ELH-14-2627,

2016 WL 4944978, at *4 (D. Md. Sept. 15, 2016) ("[L]ocal governmental bodies may be liable under § 1983 based on the unconstitutional actions of individual defendants, but only if those defendants were executing an official policy or custom of the local government that resulted in a violation of the plaintiff's rights."). To establish a claim under § 1983, on the other hand, Kovari must demonstrate that the defendants had a policy, custom, or practice which caused the violation of his civil rights, Shields v. Prince George's C'nty, No. GJH-15-1736, 2016 WL 4581327, *21–22 (D. Md. Sep. 1, 2016)—something not permissible to establish of breach of a duty of care in a negligence action. See Pullen v. Nickens, 226 Va. 342, 350, 310 S.E.2d 452, 456 (1983) (citing Virginia R. & P. Co. v. Godsey, 117 Va. 167, 168-69, 83 S.E. 1072, 1073 (1915)). For this reason, defendants contend that permitting Kovari to present evidence of both his § 1983 claim and Virginia state law claims in a single trial poses a threat of unfair prejudice and has the potential to confuse the jury.

Kovari responds that, while a jury could find in Kovari's favor on his state law tort claims based upon an agency theory of liability, he also plans to ask the jury to consider whether defendants themselves, as corporations, are responsible for Kovari's injuries due to their own corporate acts and omissions and to assess punitive damages against defendants accordingly. To do this, Kovari asserts that the jury must be able to consider defendants' conduct as corporate entities, including evidence of their policies and practices, that they directed or authorized their employees' treatment of Kovari, and that they knew at a corporate level that harm would flow from the unlawful conduct alleged. See, e.g., Kaltman v. All Am. Pest Control, Inc., 281 Va. 483, 489, 706 S.E.2d 864, 868 (2011) (recognizing claim for negligence against pesticide company based upon the company's actions in

3

"authorizing and allowing" conduct at issue). The divide between what evidence is admissible for which claim is thus not as clear cut, Kovari asserts, as defendants contend, and bifurcation is ultimately unnecessary and would cause an unjustifiable level of expense and inconvenience.

The court has already bifurcated this trial once and cannot see the sense in doing so again. Such an action, which would in practice act as a trifurcation, would inconvenience the parties, the witnesses, the jurors, and the court. The court can see no effective way of handling such a trial and sees nothing requiring such a drastic step. Should certain evidence be deemed inadmissible to prove certain of Kovari's claims, a determination that has not and cannot yet be made, the court trusts in the ability of the jurors to follow instructions from the court regarding the purposes for which they may consider certain evidence.

Defendants' second motion to bifurcate, ECF No. 116, is **DENIED**.

## II.

The court will next address defendants' motion for partial summary judgment.

### A.

Pursuant to Federal Rule of Civil Procedure 56(a), the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Glynn v. EDO Corp., 710 F.3d 209, 213 (4th Cir. 2013). When making this determination, the court should consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with … [any] affidavits" filed by the parties. Celotex, 477 U.S. at 322. Whether a fact is material depends

4

on the relevant substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. (citation omitted). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. See Celotex, 477 U.S. at 323. If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986).

In determining whether a genuine issue of material fact exists, the court views the facts and draws all reasonable inferences in the light most favorable to the non-moving party. Glynn, 710 F.3d at 213 (citing Bonds v. Leavitt, 629 F.3d 369, 380 (4th Cir. 2011)). Indeed, "[i]t is an 'axiom that in ruling on a motion for summary judgment, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" McAirlaids, Inc. v. Kimberly-Clark Corp., No. 13-2044, 2014 WL 2871492, at *1 (4th Cir. June 25, 2014) (internal alteration omitted) (citing Tolan v. Cotton, 134 S. Ct. 1861, 1863 (2014) (per curiam)). Moreover, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ." Anderson, 477 U.S. at 255. However, the non-moving party "must set forth specific facts that go beyond the 'mere existence of a scintilla of evidence.'" Glynn, 710 F.3d at 213 (quoting Anderson, 477 U.S. at 252). Instead, the non-moving party must show that "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Res. Bankshares Corp. v. St. Paul Mercury Ins. Co., 407 F.3d 631, 635 (4th Cir.

2005) (quoting Anderson, 477 U.S. at 249). "In other words, to grant summary judgment the [c]ourt must determine that no reasonable jury could find for the nonmoving party on the evidence before it." Moss v. Parks Corp., 985 F.2d 736, 738 (4th Cir. 1993) (citing Perini Corp. v. Perini Const., Inc., 915 F.2d 121, 124 (4th Cir. 1990)).

**B.**

Defendants contend that three of Kovari's four counts ought to be dismissed, as the Virginia statute of limitations particular to tort claims relating to conditions of confinement has run. Claims II through IV (negligence, gross negligence, and intentional infliction of emotional distress, respectively) are personal injury counts. Virginia has a two-year statute of limitations for general personal injury actions. Va. Code § 8.01-243. However, claims arising from conditions of confinement are subject to a different, shorter statute of limitations:

> No person confined in a state or local correctional facility shall bring or have brought on his behalf any personal action relating to the conditions of his confinement until all available administrative remedies are exhausted. Such action shall be brought by or on behalf of such person within one year after cause of action accrues or within six months after all administrative remedies are exhausted, whichever occurs later.

Va. Code § 8.01-243.2. Because more than a year had elapsed between the events giving rise to Kovari's claims and his filing of this suit, defendants argue that § 8.01-243.2 requires their motion for partial summary judgment be granted.

Kovari responds by pointing out that Virginia code defines "local correctional facility" as "any jail, jail farm or other place used for the detention or incarceration of adult offenders, excluding a lock-up, which is owned, maintained or operated by any political subdivision or combination of political subdivisions of the Commonwealth," and "state

6

correctional facility" as "any correctional center or correctional field unit used for the incarceration of adult offenders established and operated by the Department of Corrections, or operated under contract pursuant to § 53.1-262."[1] Va. Code 53.1-1. Defendants, in transporting Kovari to Texas, were state actors but were under contract with the Harris County Sheriff's Office, not with the Director of the Virginia Department of Corrections. Kovari argues that, according to Virginia's statutory definitions, § 8.01-243.2 does not apply because, when he was in defendants' custody, he was not incarcerated in a local or state correctional facility. In support of his contention, Kovari cites Lloyd v. Morgan, No. 4:14cv107, 2015 WL 1288346, at *9 (E.D. Va. March 20, 2015), which referred to Va. Code 53.1-1's definitions to prevent the application of § 8.01-243.2 to claims arising from time spent in a juvenile detention center. Kovari argues this case proves that § 53.1-1's definitions apply here and limit the applicability of the one-year statute of limitations to confinement operated by Virginia. Thus, the standard two-year statute of limitations applies to his tort claims.

The court agrees. The Virginia General Assembly established both a one-year statute of limitations for claims arising from conditions of confinement and the exact conditions of confinement to which this shorter statute of limitations would apply. As the Lloyd court held, "Virginia Code § 8.01-243.2 does not contain a catch-all term such as, 'other correctional facility,'" but instead, incorporates "language limiting the scope of these words .

---

[1] Va. Code § 53.1-262 governs how the Commonwealth may enter into private contracts with prison contractors and reads, in pertinent part, "The Director, subject to any applicable regulations which may be promulgated by the Board pursuant to § 53.1-266 and subject to the provisions of the Virginia Public Procurement Act (§ 2.2-4300 et seq.), is hereby authorized to enter into contracts with prison contractors for the financing, site selection, acquisition, construction, maintenance, leasing, management or operation of prison facilities, or any combination of those services . . . ." The "under contract" aspect of this definition refers only to contracts entered into by the Director of Virginia Department of Corrections. See Va. Code § 53.1-262 (governing state correctional facilities run through private contracts).

. . . " Lloyd, 2015 WL 1288346, at *10. Defendants reply that § 8.01-243.2 does not reference, adopt, or incorporate definitions from § 53.1-1, but the Code of Virginia is one body of law. Newton v. Commonwealth, 21 Va. App. 86, 90, 462 S.E.2d 117, 119 (1995). Courts have clearly already referred to the definitions provided by Va. Code § 53.1-1 in interpreting § 8.01-243.2. There is no reason not to do so here.

In their reply, defendants argued that Kovari "would have this [c]ourt apply [the statute] to discriminate against Virginia's sister jurisdictions, the employees and agents of such jurisdictions, and out-of-state entities such as Defendant." ECF No. 135, at 5. This, argues defendants, would violate the Dormant Commerce Clause of the Constitution. Defendants argue that, although the affirmative defense of a statute of limitations is not a fundamental right, such statutes are "an integral part of the legal system and are relied upon to protect the liabilities of persons and corporations active in the commercial sphere." Defendants claim that Kovari's reading of this statute of limitations would provide a different and more favorable statute of limitations to the Commonwealth of Virginia and its local political subdivisions while achieving no legitimate state interest, as a distinction between in-state and out-of-state prisons and transport companies has no readily apparent government interest except to place an additional financial burden on out-of-state companies.

In determining whether a state law violates the Dormant Commerce Clause, courts follow a two-step analysis. Brown v. Hovatter, 561 F.3d 357, 363 (4th Cir. 2009). First, a court must ask whether the state law discriminates against interstate commerce. Id. If there is no discrimination, a court must ask whether the state law "unjustifiably . . . burden[s] the

interstate flow of articles of commerce." Id. In addressing whether a state law unjustifiably burdens interstate commerce, the court generally applies the test first articulated in Pike v. Bruce Church, Inc., 397 U.S. 137, 142 (1970), under which the challenged law "will be upheld unless the burden imposed on [interstate] commerce is clearly excessive in relation to the putative local benefits."

Turning this analysis to Va. Code § 8.01-243.2, the court finds the answer to the first of the above questions to be, "No." Nothing in the language of the statute refers to out-of-state actors or, indeed, to commerce of any kind. The statute does not treat persons from different states differently, but applies to any torts committed in Virginia correctional institutions, by anyone. The answer to the second question is, again, "No." This statute has nothing to do with commerce, travel, or favoring Virginia residents; as Kovari pointed out at the hearing on this matter, the statute would have the same effect on Kovari's claims if defendants were domiciled in Virginia. The crux of the matter is whose custody Kovari was in when his claim arose. As defendants contracted with the sheriff of Harris County in Texas, he was clearly not in the custody of the Commonwealth of Virginia. Nothing in the General Assembly of Virginia limiting the application of this statute of limitations to claims arising from a state or local correctional facility offends the Commerce Clause of the Constitution.

Finally, defendants argue that this reading would violate their rights under the Equal Protection Clause, which limits a state's power to condition the right of an out-of-state corporation to do business within its borders. Metro. Life Ins. Co. v. Ward, 470 U.S. 869, 875 (1985). When determining if the state legislature violated the Equal Protection Clause,

the court must first determine the classification used for the discriminatory purpose and then decide what level of scrutiny must be applied based on such a classification. Clark v. Jeter, 486 U.S. 456, 461 (1988). At a bare minimum, when a statutory classification neither employs a suspect distinction nor burdens the exercise of a fundamental constitutional right, that classification must be rationally related to a legitimate state interest—a level of examination referred to as "rational basis scrutiny." Palmer v. City Nat'l Bank, 498 F.3d 236, 247 (4th Cir. 2007). Defendants do not contest that the applicable scrutiny level is rational basis. The court finds nothing in Virginia limiting the application of a statute of limitations to its own conditions of confinement that does not meet the minimum standards set by rational basis scrutiny. Again, the statute does not discriminate against out-of-state transport companies; it simply applies only to limit claims of persons confined in state facilities. The citizenship of the defendant is of no matter.

Defendants' motion for partial summary judgment is **DENIED**.

### C.

The court now turns to the Order to which defendants object. Defendants filed their objections to the September 19, 2019 Order issued by the magistrate judge in this case. After reviewing the appropriate pleadings and reading the transcript of the September 4, 2019 discovery hearing, the court generally agrees with the approach taken by the magistrate judge, subject to certain refinements. The court believes that these certain refinements are necessary to the discovery order based on concerns of relevance and proportionality.

With regard to the five categories of documents identified in the September 18, 2019 Order, defendants are required to produce the following documents within thirty (30) days:

1. <u>Investigations and Audits.</u> The September 12, 2019 Order first directs defendants to produce "all investigative reports and documents related to the investigation of deaths and serious physical injuries (defined as those injuries requiring hospitalization) alleged by inmates that have occurred during transportation by defendants as a result of illness, disease, or the conditions of confinement since January 1, 2011." The Order then directs defendants' production to "focus on the roughly twelve investigations that defendants' counsel noted during the conference call."

   The court agrees that defendants should produce internal investigative reports of deaths or serious injuries (requiring hospitalization) as a result of the deprivations alleged by Kovari in his Complaint, namely that his shackles were too tight, he was crammed in the back of a van, he was regularly deprived of adequate food and water, he was deprived of regular stops to use the restroom, shower or sleep, he was forced to sit in human waste and filth, was subjected to verbal threats and abuse, and was deprived of medication and medical treatment for his hypertension. Internal investigative reports on issues unrelated to Kovari's allegations are irrelevant and need not be produced. In this regard, the court can discern no relevance to investigations or audits relating to issues not claimed by Kovari, such as van accidents, assaults or unrelated violations of Department of Transportation regulations, such as those concerning excessive hours logged by drivers. This case does not concern allegations of physical assault, motor vehicle accident, or any other

harm sustained by Kovari as a result of violation of Department of Transportation driving regulations.

To the extent that a Department of Transportation or other external audit bears on Kovari's claims, audits relating to 2016 are to be produced. Should any such 2016 audit provide a basis for additional discovery on relevant topics, Kovari may make a further request.

2. <u>Documents Regarding Managerial Training.</u> The magistrate judge's ruling as to this discovery topic is affirmed.

3. <u>Documents Regarding Media Coverage.</u> The magistrate judge's ruling as to this discovery topic appropriately cabined discovery to communications from or between individuals who have the authority to make policy-level decisions for defendants.

The court believes that two further limitations are necessary. First, communications dealing with aspects of the Marshall Project Report unrelated to Kovari's complaints are not relevant and need not be produced. Second, a limitation is necessary as to the timing of such communications, given that the Marshall Project Report came out a few months before Kovari's transport. In this regard, discovery is limited to: (1) communications regarding the report and related letter occurring prior to Kovari's transport; and (2) later communications regarding the report and related letter concerning policies in place at the time of Kovari's transport.

4. <u>Documents Regarding Other Passengers.</u> Kovari seeks discovery on five or six persons who he claims were transported by defendants but has made no showing that any of these persons experienced similar issues as did Kovari or are likely to have

discoverable information. Defendants aptly note that these persons have not been identified in Kovari's initial disclosures. Kovari's assertions regarding these persons at the hearing was rather amorphous. Absent some assertion that these persons experienced circumstances in their transportation bearing on Kovari's case, the court will not indulge this fishing expedition. Defendants' objection to this request is sustained.

### III.

For the reasons given above, the court **DENIES** both defendants' motion to bifurcate, ECF No. 116, and defendants' motion for partial summary judgment, ECF No. 118. The court **GRANTS in part and DENIES in part** defendant's motion to vacate the discovery order, according to the specifications given above. ECF No. 134.

An appropriate Order will be entered.

Entered: 12/06/2019

/s/ Michael F. Urbanski

Michael F. Urbanski
Chief United States District Judge