CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED
5/19/2020
JULIA C. DUDLEY, CLERK
BY: s/ J. Vasquez
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| EDWARD KOVARI, ) | |
|     Plaintiff, ) | Civil Action No. 5:18cv0070 |
| ) | |
| v. ) | |
| ) | By: Michael F. Urbanski |
| BREVARD EXTRADITIONS, LLC, ) | Chief United States District Judge |
| et al., ) | |
| ) | |
|     Defendant. ) | |

## MEMORANDUM OPINION

This matter is before the court on objections filed by defendant Brevard Extraditions, LLC, Prisoner Transportation Services of America, LLC, and Prisoner Transportation Services, LLC's (collectively "Brevard") to Magistrate Judge Joel C. Hoppe's March 3 discovery order, ECF No. 208; and Brevard's objections to Magistrate Judge Hoppe's order granting sanctions, ECF No. 170. Plaintiff Edward Kovari responded to both sets of objections. ECF Nos. 201, 225. The court heard argument on the motions on May 8, 2020 and the issues are ripe for resolution.

Rule 72(a) of the Federal Rules of Civil Procedure permits a party to submit objections to a magistrate judge's ruling on non-dispositive matters, such as discovery orders or the imposition of sanctions. Fed. R. Civ. P. 72(a); see 28 U.S.C. § 636(b)(1)(A). As a non-dispositive matter, the review of a magistrate judge's discovery order is governed by the "clearly erroneous" or "contrary to law" standard of review. Id. Only if a magistrate judge's decision is 'clearly erroneous or contrary to law' may a district court judge modify or set aside any portion of the decision. Minke v. Page Cty.,

No. 5:18-CV-82, 2019 WL 3413854, at *1 (W.D. Va. Jul. 29, 2019). A court's "finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948); see also Harman v. Levin, 772 F.2d 1150, 1152 (4th Cir. 1985). "In light of the broad discretion given to a magistrate judge in the resolution of nondispositive discovery disputes, the court should only overrule a magistrate judge's determination if this discretion is abused." Shoop v. Hott, 2010 WL 5067567, *2 (N.D.W.Va. Dec. 6, 2010) (citing Detection Sys., Inc. v. Pittway Corp., 96 F.R.D. 152, 154 (W.D.N.Y. 1982)).

## I. OBEJCTIONS TO DISCOVERY ORDER

The court will first address Brevard's objections to Magistrate Judge Hoppe's March 3 discovery order. On February 5, 2020, the parties held a hearing on the record to resolve outstanding discovery disputes regarding Kovari's requests for production and requests for admission. See Transcript of Hearing, ECF No. 197, at 3:1-7.

### A. REQUESTS FOR PRODUCTION

Through his December 2019 requests for production, Kovari sought transport related documentation regarding eight passengers who experienced medical complications during their transports, all of whom were discussed in Brevard's internal communications and documents, to support his claim that defendants maintained unconstitutional practices and customs. Id. at 6:13-25. The requests sought five types of documents: (1) extradition forms, (2) medical questionnaires, (3) prisoner property

2

forms, (4) forms regarding prisoner bathroom breaks and meals, and (5) any documentation regarding fitness for transportation. Pl.'s Fifth Set of Reqs. For Produc. Nos. 38–45. This court previously held that documents regarding medical issues experienced by transport passengers generally relevant and discoverable, which the Magistrate Judge noted during the hearing.[1] See ECF No. 151 at 10-13; ECF No. 157. Brevard objected to the claims, contending that the requests were irrelevant, unduly burdensome, and compromised third-party sensitive information. ECF No. 225-3.

After hearing extensive argument, Magistrate Judge Hoppe directed Brevard to produce the first four categories of requested documents but limited the fifth category to documents related to a passenger's fitness for travel possessed by Brevard before or during the transport only. ECF No. 208. Additionally, he denied Kovari's requests for production of documents regarding two of the eight passengers identified, finding that the two requests denied did not possess sufficient similarities to Kovari's claims to be discoverable. Id. Magistrate Judge Hoppe also found Brevard's privacy concerns unpersuasive, given the two protective orders governing disclosures in this case.

Brevard now claims that, while it is willing to produce the ordered documents for four out of the six passengers identified as discoverable in the March 3 order, it would "pose a substantial burden upon Defendants" and be "plainly unreasonable" to require them to produce documents for the remaining two. ECF No. 222, at 2. Brevard claims that these two passengers are not identified by name in the requests and that

---

[1] This court held that "internal investigative reports of deaths or serious injuries (requiring hospitalization) as a result of the deprivations alleged by Kovari in his Complaint" were relevant and discoverable.

3

Kovari provides no more than "vague descriptions" of these passengers. Id. In response, Kovari claims that the requests, and attached exhibits, provided the dates of the incident, the employees involved with the transport, and a description of the medical issue. ECF No. 225, at 8. Kovari contends that he does not have more specific information about the individuals' identities, and that defendants have exclusive access to such information, which is precisely why he is requesting that documentation. Id.

Federal Rule of Civil Procedure 34 governs document production requests. Pursuant to Rule 34, a party may request that the opposing party "produce and permit the requesting party…to inspect, copy, test, or sample" relevant documents, electronically stored information, and tangible things that are within the party's "possession, custody, or control." Fed. R. Civ. P. 34(a)(1). The party served with a document production request may object to the request if a legitimate basis for doing so exists. See Fed. R. Civ. P. 34(b)(2)(B); see also Fed. R. Civ. P 34(b)(2)(C). Thus, a party may object that a document production request exceeds the scope of discovery permitted by Fed. R. Civ. P. 26(b)(1); that it should be denied for the grounds stated in Fed. R. Civ. P. 26(b)(2)(C); that it impermissibly requests privileged or work product material, see Fed. R. Civ. P. 26(b)(3); or that documents should not be produced without implementation of a protective order, see Fed. R. Civ. P. 26(c). All objections to document production requests must be stated with particularity and specificity. Lynn v. Monarch Recovery Mgmt., Inc., 285 F.R.D. 350, 360 (D. Md. 2012); "There is abundant caselaw to the effect that boilerplate objections to Rule 34 document requests are inappropriate." Frontier-Kemper Constructors, Inc. v. Elk Run Coal Co., 246

4

F.R.D. 522, 528 (S.D.W. Va. 2007) (finding mere recitations that production would be unduly burdensome without a specific showing as to why to be insufficient).

The court finds Brevard's objections fail to show the March 3 order requiring production amounts to clear error. Brevard's objections fall short of the Rule 34 standard. They are vague and conclusory, merely claiming that identifying these passengers would be prohibitively difficult and that these documents are irrelevant without elaborating why. Rule 34 does not permit boilerplate objections. First, the court finds these documents clearly relevant to Kovari's claims. Of particular import would be documents related to the passenger who had high blood pressure, did not receive medication, and was ultimately hospitalized.[2] That request, challenged here, involves nearly parallel circumstances to those alleged by Kovari.

Second, Magistrate Judge Hoppe heard and thoroughly considered the issue of barriers to production in making his decision, and this court finds no grounds for clear error. Generally, "'the burden of proof is with the party objecting to the discovery to establish that the challenged production should not be permitted.'" Doe v. Old Dominion Univ., No. 2:17cvl5, 2018 WL 653797, at *2 (E.D. Va. Jan. 31, 2018)

---

[2] Rule 26 of the Federal Rules of Civil Procedure provides that:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).

5

(quoting Singletary v. Sterling Transp. Co., 289 F.R.D. 237, 241 (E.D. Va. 2012)). At the February hearing, Brevard argued that given its lack of an organized records system, finding documentation on unnamed passengers based on these descriptions would be challenging. ECF No. 197, at 8:4-18 ("A lot of it is paper records. And then it is scans of paper records that are not kept in the way we might do things today."). Acknowledging these concerns, the Magistrate Judge still found that Kovari's interest in reviewing documents for passengers who had underlying medical conditions and were hospitalized in the course of their transport prevailed. Id. at 18:10-22 ("I'm sorry if your client kept records in a way that is hard for them to identify things, but…it sounds like it is relevant information.").

Brevard's objections fall short especially if, as Kovari suggests, Brevard maintains trip logs it can query using the dates referenced in the requests to identify the passengers. ECF No. 225, at 10. At the May hearing, counsel for Brevard raised, for the first time, concerns about placing the burden of production on a "skeleton crew" employed by his client in light of the novel coronavirus pandemic. However, the court finds that, equipped with the dates of transport for these passengers, the staff can narrow the scope of their search. Further, given the continuance of the trial occasioned by the pandemic, the court will grant Brevard ninety (90) days to complete this production, which will minimize the burden caused by staffing issues. Additionally, the court finds these documents clearly relevant to Kovari's claims. Accordingly, the court finds no clear error in the March 3 order regarding these requests for production.

## B.  REQUESTS FOR ADMISSION

Next, Brevard objects to Magistrate Judge Hoppe's order admitting some of Brevard's responses to Kovari's requests for admission and directing Brevard to amend others. In particular, Brevard objects to Magistrate Judge Hoppe's decision to admit numbers 15, 17, 18, and 21. Each of these narrowly framed requests sought admissions to specific inquiries regarding the lack of medical care, defined as "services related to the maintenance of health," provided to Kovari during his transport. In its responses to 15, 21, and 18, Brevard does not contest the lack of medical care provided but caveats the admission with qualifying statements explaining why no medical care was necessary or provided. ECF No. 222, at 3-4. Brevard denied request 17, which asked whether defendants contacted any medical professionals, stating "Defendants deny the request because they relied, in part, upon the determination of medical professionals at the Northwestern Regional Detention Facility that Plaintiff was fit for transport." ECF No. 222, at 5-6. Kovari argued and the Magistrate Judge agreed that these qualifying statements were non-responsive to the narrowly framed requests and were therefore impermissible. ECF No. 208, at 4; See Sobolik Tr. for Sobolik v. Briggs & Stratton Corp., No. CV 09-1785, 2010 WL 11640189, at *4 (D. Minn. July 2, 2010). The March 3 order struck the qualifying statements from the responses and deemed requests 15, 21, 18, and 17 to be admitted. Now, Brevard claims that the answers were responsive and that the Magistrate Judge erred in not considering that defendant made the qualifications in good faith. ECF No. 222, at 2-6.

"Federal Rule of Civil Procedure 36 allows any party to serve on another party requests to admit the truth of facts, the application of law to fact, or opinions relating to matters within the scope of discovery." Ball-Rice v. Bd. of Educ. of Prince George's Cty., 2013 WL 2299725, at *2 (D. Md. May 24, 2013). The purpose of the rule is to narrow the issues before the court to expedite the discovery process and the litigation as a whole. Adventis, Inc. v. Consolidated Prop. Holdings, Inc., 124 F. App'x 169, 172 (4th Cir. 2005). The serving party may move the court "to determine the sufficiency of an answer or objection." Fed. R. Civ. P. 36(a)(6). The Rule provides two possible sanctions for a deficient answer: (1) to deem the matter admitted, or (2) to make the responding party serve an amended answer. Id. If the responding party denies a requested item, the denial "must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only part of a matter, the answer must specify the part admitted and qualify or deny the rest." Fed. R. Civ. P. 36(a)(4). If a party's answers are "evasive or fail to respond to the substance of the question, and the evidence establishes that the request should have been admitted," the court may deem the matter admitted. EEOC v. Balt. Cty., No. L-07- 2500, 2011 WL 5375044, at *2 (D. Md. Nov. 7, 2011) (citing Southern Ry. Co. v. Crosby, 201 F.2d 878, 880–81 (4th Cir. 1953)).

The court finds no grounds for clear error in the Magistrate Judge's decision to deem requests 15, 17, and 21 admitted without qualification. Rule 36 provisions for qualified answers, when "good faith *requires* that a party qualify an answer," which is not the case here. No qualification is required in this case where there is no factual

dispute about whether Kovari was provided medical care (RFA 15), whether any medical professionals were contacted (RFA 17), and whether any doctors or nurses were contacted (RFA 21). Magistrate Judge Hoppe found these requests did not necessarily imply that Kovari asked for medical care, therefore finding Brevard's qualifications unresponsive and unjustified. Havenfield Corp. v. H & R Block, Inc., 67 F.R.D. 93, 97 (W.D. Mo. 1973) (deeming facts admitted where party responded to straightforward and unequivocal requests for admission with improper qualified answers). The court finds no clear error in this finding.[3]

However, the court finds Kovari's request for admission 18 to be vague in scope and therefore sustains Brevard's objections to its unqualified admission. In it, Kovari asks Brevard to admit that it "did not measure or evaluate Plaintiff's blood pressure during his September 2016 transport." ECF No. 225-4, at 7. Brevard responded by objecting to the use of the term "evaluate," admitting that they did not take Kovari's blood pressure and denying "that they did not evaluate his condition during his September transport." Id. The term "evaluate" can encompass many definitions, and the court agrees with Brevard that a qualification in its response to this request is necessary. Accordingly, the court finds the admission of this request without the qualification improper.

---

[3] Simply because plaintiff will be permitted to read Requests for Admissions 15, 17 and 21 as unqualified admissions does not limit Brevard at trial from introducing evidence consistent with its defense position that Kovari did not exhibit symptoms requiring medical care, did not ask for medical care, and that Brevard relied on the staff at Northwestern Regional Detention Facility to evaluate Kovari's condition prior to transport.

Brevard also objects to the March 3 order in so far as it directs defendants to amend their responses to Kovari's requests 31 through 40. Kovari argues that these requests clearly ask for admissions that "trip managers" do not receive any more training or testing than agents. Specifically, he sought "centralized training materials for the role of trip manager," which he argues refers to training specific to the role of trip manager, not training that a trip manager might have received in the past as an agent. ECF No. 197, at 36:1-6; ECF No. 225, at 14. Brevard claims the requests are ambiguous because a denial would suggest trip managers receive no training, which is untrue, because all trip managers received mandatory training when they were agents. ECF No. 222, at 6-7. Accordingly, Brevard responded to the requests objecting to their ambiguity and irrelevance and stating that trip managers were all trained and tested as agents and received on the job training as trip managers. The Magistrate Judge found the responses deficient and vague, in that they do not clearly address the crux of the inquiry: whether training material specific to the role of "trip manager" exists. The March 3 order requires Brevard to amend its responses to "answer the Plaintiff's requests for admission regarding any additional specific training material and/or testing that is given to employees who become trip managers." ECF No. 208, at 6-7.

This court agrees generally with the need for supplemental responses by Brevard and finds no clear error in ordering Brevard to amend its responses. Brevard is directed to respond directly to inquiries as to the existence of training documents, centralized training, classroom training, classroom medical training, centralized medical training, training course, test or exam, official training, and centralized training

10

material specific to the role of trip manager. In light of discovery conducted so far, Brevard does not dispute that trip managers receive no additional training. It has already amended a related response to request for production (RFP 28) to say there are no responsive documents specific to the position of trip managers. ECF No. 197, at 45:8-14. In short, Brevard should respond to the requests with clarity as to whether trip managers received additional training to meet the requirements of that job. At the same time, however, because the requests are not expressly limited to the issue of additional training provided to trip managers, Brevard is entitled to qualify its supplemental responses to explain that all trip managers were once agents, that all agents received certain training, and that trip managers receive on the job training in their role as trip managers. As such, Brevard's objections to the Magistrate Judge's rulings as to the supplementation of its responses to Kovari's requests for admissions 31 through 40 are **SUSTAINED IN PART**. Brevard is required to supplement its responses to requests for admissions 31 through 40 with a clear response as to whether trip managers receive training specific to that role, but may provide, in good faith, any required qualification as to training trip managers receive as agents and on the job.

## C. INTERROGATORY

Brevard also objects to Magistrate Judge Hoppe's order directing Brevard to identify source material for the policy manual in effect during Kovari's transport.[4] The request includes policies regarding the provision of meals, price limited per diem, the

---

[4] Magistrate Judge Hoppe converted Kovari's request for production of documents into an interrogatory as an alternate, ostensibly less burdensome, method of discovering this information.

11

provision of water, restroom break protocol, and the provision of medical care to prisoners. ECF No. 208, at 7. Brevard was directed to "to specifically identify any documents or materials upon which they relied in developing the aforementioned policies that were in effect during the Plaintiff's transport and which they intend to cite or reference in testimony at trial." Id. Brevard objects to the order on the grounds that the policies date back to 2011 and that production of the material is unduly burdensome and irrelevant to the case. ECF No. 222, at 7. It claims that the written material used to form the policies are irrelevant and that only Brevard's policy at the time matters. Id.

However, the court agrees with the Magistrate Judge that the material is clearly relevant for the purposes of impeaching Brevard's witnesses. A Brevard executive testified in deposition that the company relied on policies "put out by various associations and governmental agencies. I know they collected that material, reviewed that material, and then used that material in developing our policies and procedures." Dep. Tr. of Joel Brasfield, ECF No. 130-3 at 40. In a case challenging the reasonableness of Brevard's policies and customs at the time of the transport, the credibility of witness testimony regarding the source of the material used in policy formation is plainly relevant. Brevard's Brasfield offered to provide this information after the deposition, negating the argument that its production was unduly burdensome. The court finds no clear error in the Magistrate Judge's ruling requiring Brevard to identify the policies and procedures referenced on page 40 of Joel

12

Brasfield's deposition either by supplemental document production or interrogatory response. Admission of trial evidence related to this issue will be addressed at trial.

The court **OVERRULES** Brevard's objections to the March 5 order regarding the interrogatory, the requests for production, and for requests for admission 15, 17 and 21. The court **SUSTAINS** the objection regarding request for admission 18 and **SUSTAINS IN PART** the objection regarding requests for admissions 31 through 40. The court upholds the Magistrate Judge's decision to strike qualifying language in Brevard's responses to requests for admission 15, 17, and 21, permits Brevard's qualified admission to request for admission 18, and requires supplemental responses to requests for admission 31 through 40 consistent with this opinion.

## I.  OBJECTIONS TO SANCTIONS

On June 6, 2019, Kovari filed a motion for sanctions against counsel for Brevard, requesting reimbursement for costs and attorney's fees expended as a result of Brevard's "unjustifiably late discovery disclosures." Kovari stated that Brevard's failure to disclose discovery in a timely fashion had resulted in counsel for Kovari taking the unnecessary out of state deposition of a misidentified witness, Juan Torres, purportedly one of Kovari's transport drivers. ECF No. 98. Brevard responded that Kovari cannot prove that the witness was indeed misidentified, and that even if he was, that the mistake was reasonable given that there were two drivers with the same last name (Juan Torres and Ishmael Torres). ECF No. 105. Magistrate Judge Hoppe granted in part the motion for sanctions, limiting the cost and expenses Kovari could

13

recover to trips it would not have made but for the misidentified witness.[5] In objecting to this order, Brevard reiterates the objections made to the original motion as well as a new objection alleging that Kovari's motion for sanctions was never noticed for a hearing as required by the Local Rules. ECF No. 191, at 2.

The court finds that in reproducing the same objections made to Kovari's original motion for sanctions, Brevard misunderstands the Magistrate Judge's grounds for ordering sanctions. He found the delay unjustified and prejudicial, not in bad faith. ECF No. 170, at 6 ("The Defendants' failure to disclose Ismael Torres as a driver of Kovari's transport was not harmless nor substantially justified and, therefore, Kovari is entitled to sanctions."). Based on a thorough review of the facts, the Magistrate Judge's found that Brevard was aware of the substantial likelihood that Juan Torres was not the correct driver in December 2018 but had failed to produce documents identifying Ismael Torres as the correct driver in a timely fashion. Id. at 5.

In evaluating the appropriateness of sanctions under Rule 37(c), the Magistrate Judge determined whether the delay was justified or harmless by applying the factors laid out in Bresler v. Wilmington Tr. Co., 855 F.3d 178, 190 (4th Cir. 2017).[6] A party's position is "'substantially justified' if there is a 'genuine dispute' as to proper resolution or if 'a reasonable person could think it correct, that is, if it has a reasonable basis in

---

[5] In so holding, the court excluded reimbursements for trips to Florida Kovari would have taken regardless of the unnecessary deposition, in order to take the depositions of other witnesses in the case and for a van inspection. The limitations crafted by the Magistrate Judge to the request for sanctions are narrowly tailored, reasonable and justified.

[6] The factors include: (1) the surprise to the opposing party; (2) the party's ability to cure that surprise; (3) the disruption of the trial; (4) the importance of the evidence; and (5) the explanation for the nondisclosure. Id. at 596–97.

law and fact.'" Decision Insights, Inc. v. Sentia Grp., Inc., 311 F. App'x 586, 599 (4th Cir. 2009) (quoting Pierce v. Underwood, 487 U.S. 552, 565–66 n.2 (1988)). The Magistrate Judge found that it was unreasonable to conclude that Ismael Torres was not the driver based on his inability to recollect the incident in light of Brevard's internal records indicating he was the driver. Id. at 6. The Magistrate Judge also found the delay harmful to Kovari, given that the delay resulted in the cost of taking a wholly unnecessary deposition and in part necessitated a continuance of the trial date. Id. The court finds no grounds for clear error in the Magistrate Judge's review of the facts, application of the law, and imposition of narrowly tailored sanctions.

Brevard asserts no new substantive objections to the order for sanctions. An objecting party "who reiterates his previously-raised arguments will not be given the second bite at the apple he seeks. Instead, his re-filed brief will be treated as a general objection, which has the same effect as a failure to object." Cadmus v. Williamson, No. 5:15-CV-045, 2016 WL 1047087, at *2 (W.D. Va. Mar. 10, 2016) (alteration, citation, and internal quotation marks omitted). Brevard does raise a procedural challenge to the motion for sanctions, arguing that because the motion was not noticed for a hearing, the order for sanctions should be vacated. ECF No. 191. However, the Court's Scheduling Order governs motions practice in this case, and that order specifies that "[t]he court does not generally schedule motions hearings. Such scheduling is the responsibility of the parties. . . If the parties do not promptly schedule a hearing, the court will rule on the motion without a hearing." ECF No. 41, at 3. Indeed, Magistrate

15

Judge Hoppe considered and rejected this procedural challenge during the February 5 discovery hearing. ECF No. 197, at 53:4-57:12.

Accordingly, the court finds no clear error in the order for sanctions and **OVERRULES** Brevard's objections.

An appropriate Order implementing the rulings in this Memorandum Opinion will be entered.

Entered:  May 18, 2020

Michael F. Urbanski
United States District Judge