**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION**

| | |
|---|---|
| EDWARD KOVARI, <br><br>             Plaintiff, <br><br>      v. <br><br> BREVARD EXTRADITIONS, LLC, *et al.* <br><br>           Defendants. | CIVIL ACTION NO. 5:18-cv-00070-MFU-JCH |

**PLAINTIFF'S MOTION FOR REASONABLE FEES AND COSTS**

Following a successful motion for sanctions, *see* Dkt. 232, and pursuant to both Rule 37(C)(1)(a) of the Federal Rules of Civil Procedure and this Court's order, *see* Dkt. 170 at 7, Plaintiff hereby submits this motion for his requested costs and fees arising from the unnecessary deposition of Juan Torres as a result of Defendants' nondisclosure.

### I.  Factual & Procedural Background

This fee petition is the culmination of a 14-month saga that began when Plaintiff's counsel discovered that Defendants had improperly withheld the identity of one of the drivers of Plaintiff's September 2016 transport. As set forth in full in Plaintiff's Motion for Sanctions,[1] Defendants were aware that Ismael Torres drove Plaintiff during one leg of his transport as early as December 2018, when counsel for Defendants contacted him about this case. Dkt. 98 at 8. Defendants nevertheless withheld Ismael Torres's identity even as Plaintiff sought discovery on that very topic and scheduled depositions of all drivers on Plaintiff's transport. *Id.* at 3-5. Instead,

---

[1] For purposes of this motion, Plaintiff cites his motion for sanctions, which includes ample record support.

Defendants identified Juan Torres and offered him up for an April 2019 deposition alongside the other drivers. *Id.* at 3. Then, just one day *after* the driver depositions concluded, Defendants produced a large cache of internal documents and emails. *Id.* at 6. These materials not only contained information that would have been illuminating at the driver depositions, but, critically, confirmed that Ismael Torres, *not Juan Torres*, drove Plaintiff. *Id.* at 6-7. In other words, Plaintiff had deposed the wrong driver while Defendants sat idly by knowing full well that another driver had relevant information about Plaintiff's claims.

Upon review of Defendants' internal documents and emails, Plaintiff identified the error and immediately reached out to Defendants. *Id.* at 7. Even then, with the close of discovery looming large on the horizon, it took weeks more to get a response from Defendants. *Id.* (citing email from Defendants saying that their documents "speak for themselves"). By the time Plaintiff determined that another driver deposition in Florida would be necessary—that of Ismael Torres—the end of discovery had arrived. Dkt. 89 (Plaintiff's Motion for Extension of Discovery). In large part due to Defendants' nondisclosure of Ismael Torres, Plaintiff sought and obtained an extension of the discovery schedule. Dkt. 101 (Order Extending Discovery Schedule).

Because of this unjustifiable prejudice, Plaintiff sought sanctions in the form of the reasonable fees associated with preparing for and taking the needless deposition of Juan Torres and the travel costs related to the return trip to Florida to depose Ismael Torres. Dkt. 98. This Court issued a careful and thorough decision explaining why sanctions were appropriate in this situation even without a finding of bad faith. Dkt. 170. The decision provided for sanctions in the form of "the reasonable expenses, including attorney's fees, incurred in preparing for and taking Juan [Torres]'s deposition" and certain travel costs. *Id.*  Defendants then compounded the

expenditure of resources associated with their failure to disclose Ismael Torres by appealing this Court's decision to Chief Judge Urbanski, which forced Plaintiff to spend additional time briefing this topic, and then requesting oral argument, which required Plaintiff to spend additional time addressing it at a hearing on May 8. *See* Dkt. 191 (Defendants' Objections to Magistrate's Order); Dkt. 201 (Plaintiff's Response to Defendants' Objections); Dkt. 230 (Minute Entry for May 8, 2020 Hearing). Defendants' appeal to Judge Urbanski raised no new substantive arguments and included a procedural quibble that this Court had already fully considered and rejected during a hearing. *See* Dkt. 231 at 15. Judge Urbanski, too, determined that sanctions against Defendants were appropriate and affirmed this Court's order. *Id.* at 14-16.

Plaintiff therefore submits the instant petition in the amount of $4,317.50 in fees and $1583.14 in costs to be remitted to counsel for Plaintiff within ten days of the date of the Court's order on the amount of fees and costs awarded.[2] This amount reflects: (1) the reasonable attorney's fees for the time that Plaintiff's counsel spent preparing for and deposing Juan Torres; (2) the subpoena and court reporting costs incurred for the deposition of Juan Torres; (3) the travel and lodging costs for the extra night in Orlando, Florida to depose Ismael Torres; and (4) the reasonable attorney's fees for the time that Plaintiff's counsel spent responding to Defendants baseless and unsuccessful appeal of this Court's sanctions decision to Judge Urbanski.[3]

The attorney hours expended in connection with each of the above categories of time and costs are detailed in the declaration of Lila Miller and the attachments thereto, *see* Ex. B

---

[2] A proposed order granting the fees sought is attached hereto as Exhibit A.

[3] This fourth category of fees and costs arose subsequent to this Court's original grant of Plaintiff's Motion for Sanctions. As explained more fully below, *see infra* Section III.A, there is ample factual and legal support for the reimbursement of this time as part of the sanctions award. Rather than submitting a separate request for fees incurred responding to Defendants' appeal of this Court's order, Plaintiff is including his request for fees in a single petition.

(hereinafter "Miller Declaration"), and include the following total amounts for time and expenses:

| Category | Total Sanction |
| --- | --- |
| (1) the reasonable attorney's fees for the time that Plaintiff's counsel spent preparing for and deposing Juan Torres after application of billing judgment | $2,447.50 |
| (2) the subpoena and court reporting costs incurred for the deposition of Juan Torres | $1259.83 |
| (3) the travel and lodging costs for the extra night in Orlando, Florida to depose Ismael Torres | $323.31 |
| (4) the reasonable attorney's fees for time spent on appeal to Judge Urbanski after application of billing judgment | $1,870 |

Plaintiff's limited request for fees and costs goes no further than what is necessary to reimburse the expenses triggered by Defendants' nondisclosure. The amount requested is fair and reasonable in light of the underlying facts and is well within the types of awards permitted by the Fourth Circuit and this district.

## I.    Legal Standard

It is axiomatic that "[r]easonableness is the touchstone of any award of attorneys' fees and expenses. That is true whether the award is made as a consequence of a fee-shifting statute or as a sanction." *E.I. DuPont de Nemours & Co. v. Kolon Indus., Inc.*, No. 3:09cv058, 2013 WL 458532, at *2 (E.D. Va. Feb. 6, 2013). In this Circuit, "the Court considers the reasonableness of the fees requested" by applying a three-step analysis. *VT Milcom, Inc. v. PAT USA, Inc.*, No. 5:16-CV-00007, ECF No. 81 at 3 (W.D. Va. Jan. 26, 2018) (Hoppe, M.J.) (citing *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013)), *report and recommendation adopted* ECF No. 82 (W.D. Va. Feb. 16, 2018).

*First*, the Court determines the lodestar figure by multiplying the number of reasonable hours by the applicable reasonable hourly rate. *Id.*; *see also Broccoli v. Echostart Commc'ns Corp.*, 229 F.R.D. 506, 512 (D. Md. 2005) (noting the lodestar method is appropriately applied

to fee awards under Rule 37). The reasonableness of both the number of hours and the hourly rates requested is generally evaluated using the 12 factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974) (the "*Johnson* factors"). *McAfee*, 738 F.3d at 88 n.5. The twelve *Johnson* factors are: "(1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases." *Id.*

Because this application for fees arises in the context of the resolution of a discovery dispute, rather than at the conclusion of the litigation on the merits, the Court's consideration of the *Johnson* factors is limited to the "first, second, third, fifth, ninth and twelfth factors." *Lismont v. Alexander Binzel Corp.*, 47 F. Supp. 3d 443, 450 (E.D. Va. 2014) (excluding the "fourth, sixth, seventh, eighth, tenth, and eleventh factors"); *see also Sines v. Kessler*, No. 3:17-cv-00072, 2020 WL 2736434, at *9 (W.D. Va. May 26, 2020) (Hoppe, M.J.) (awarding sanctions after consideration of the first, second, third, fifth, and ninth *Johnson* factors); *Scott v. Clarke*, No. 3:12-CV-00036, 2014 WL 1463755, at *4 (W.D. Va. Apr. 15, 2014) (awarding fees based on submission that specifically addressed only the second, fifth, and ninth *Johnson* factors); *SunTrust Bank v. Nik*, No. 1:11cv343, 2012 WL 1344390, at *3 (E.D. Va. Mar. 22, 2012) (excluding the "fourth, sixth, seventh, eighth, tenth, and eleventh factors").

***Second***, the Court must "subtract fees for hours spent on unsuccessful claims unrelated to successful ones." *VT Milcom, Inc.*, No. 5:16-CV-00007, ECF No. 81 at 7 (citing *Nationwide Prop. & Cas. Ins. Co. v. Jacobsen*, No. 7:14cv516, 2015 WL 7302443, at *2 (W.D. Va. Nov. 10, 2015), and declining to reduce sanctions award because the moving party met with complete success).

***Third***, the Court "awards a percentage of the remaining amount to the prevailing party, depending on the degree of success of the prevailing party's claims." *VT Milcom, Inc.*, No. 5:16-CV-00007, ECF No. 81 at 4.

## II.    Argument

As set forth in more detail below, Plaintiff has taken a deliberately conservative approach in their fee request that easily satisfies all relevant *Johnson* factors and provides no basis for further reduction. Represented by experienced and able counsel, Plaintiff pursued undisputedly justified sanctions against Defendants for their discovery violation. The rates being requested for purposes of this fee petition are reasonable; indeed, they both reflect a significant reduction of Plaintiff's regular rate and align with market rates previously approved in this district. The number of hours being requested is also reasonable, including only the hours of one attorney and excluding all paralegal time and costs. Accordingly, the Court should award Plaintiff the lodestar amount as set forth above.

A.    The Applicable *Johnson* Factors Support the Requested Fees

Plaintiff seeks only $4,317.50 in attorney's fees for time expended preparing for and conducting the unnecessary deposition of Juan Torres and successfully defending this Court's order on appeal to Judge Urbanksi. Of the six *Johnson* factors that apply to a fee petition in this posture, all support awarding Plaintiff's requested amount.

6

    *1.   The time and labor expended was reasonable.*

    "A fee applicant has the burden of proving hours to the district court by submitting contemporaneous time records that reveal all hours for which compensation is requested and how those hours were allotted to specific tasks." *CoStar Group, Inc. v. LoopNet, Inc.*, 106 F. Supp. 2d 780, 788 (D. Md. 2000) (collecting cases). There are two categories of time relevant to Plaintiff's fee petition: the time associated with Juan Torres's needless deposition and the time associated with responding to Defendants' appeal of this Court's order of sanctions. The contemporaneous time records for both categories are attached as Attachment A to the Miller Declaration.

    With respect to the time related to Juan Torres's deposition, Plaintiff seeks just under nine hours of time total (specifically 8.9 hours). Miller Decl. ¶ 12; *see also* Attachment B to Miller Decl. This amount includes only the time expended by Ms. Miller; Plaintiff is not seeking the time of other attorneys and paralegals who expended time related to the deposition, including paralegal time spent subpoenaing Juan Torres or the time other attorneys spent assisting at the deposition itself.[4] *Id.* Thus, in counsel's exercise of billing judgment, the time and labor for this deposition has already been significantly reduced to cover just that of the primary attorney involved in this needless deposition. *Id.*; *see also id.* ¶ 15. Counsel has also reviewed Ms. Miller's contemporaneous entries and made appropriate cuts to ensure that only time spent in connection with Mr. Torres's deposition is sought in this petition. The 8.9 hours of time sought includes only: (1) the time Ms. Miller spent reviewing Mr. Torres's personnel documents and the policy material produced in discovery that related to Mr. Torres; (2) the time Ms. Miller spent

---

[4] Like Defendants, Plaintiff had two attorneys present at each driver deposition, partner Jia Cobb and associate Lila Miller.

preparing for Juan Torres's deposition, including preparing an outline of questions; and (3) the time Ms. Miller spent deposing Juan Torres. *Id.* ¶ 11. This time is eminently reasonable given that, at the time of Juan Torres's deposition, Plaintiff believed him to be one of just five key fact witnesses in the case (apart from Plaintiff himself). Accordingly, "the number of hours for which [Plaintiff] seeks reimbursement is reasonable and does not include hours that are excessive, redundant, or otherwise unnecessary." *Lopez v. XTEL Contr. Grp., LLC*, 838 F. Supp. 2d 346, 348 (D. Md. 2012) (quoting *Travis v. Prime Lending*, No. 3:07cv65, 2008 WL 2397330, at *4 (W.D. Va. June 12, 2008)).

With respect to the time related to Defendants' appeal of this Court's order, Plaintiff seeks just 6.8 hours of time. Here, too, Plaintiff has limited the time to that of Ms. Miller and has excluded the time other attorneys spent preparing Plaintiff's Response to Defendants' Objections; the paralegal time related to filing Plaintiff's Response; and the time other attorneys spent preparing for the May 8 hearing. *Id.* ¶ 14. Further, counsel applied a 75 percent reduction to the overall time Ms. Miller spent preparing for and conducting the May 8 hearing because the hearing also covered three other discovery topics. *Id.* This reduction ensures that counsel is compensated only for time counsel spent litigating Defendants' appeal of this Court's sanctions order. *Id.* And again, the total amount of time sought is reasonable given the time necessary to draft a responsive brief—which included conducting legal research, reviewing and synthesizing over 40 pages of the underlying briefing before this Court as well as this Court's January 31 Order, and actual drafting—and the time necessary both to outline the arguments prior to appearing before Judge Urbanski on May 8 and to argue at the hearing. *Id.* ¶ 13. Here, too, then, the "number of hours for which [Plaintiff] seeks reimbursement is reasonable and does not

include hours that are excessive, redundant, or otherwise unnecessary." *Lopez*, 838 F. Supp. 2d at 348; *Travis*, 2008 WL 2397330, at *4.

Although this second category of time arose subsequent to this Court's original order granting sanctions, it is consistent with Federal Rule of Civil Procedure 37 and the law of this circuit. Rule 37(c)(1)(A) provides that a court "may order payment of the reasonable expenses, including attorney's fees, caused by the failure [to disclose]." Here, Defendants' decision to appeal this Court's order granting sanctions both flowed from and compounded the harm of their nondisclosure because it forced Plaintiff to expend additional time to respond both in writing and at oral argument. *See* Dkt 201 (Plaintiff's Response to Defendants' Objection); Dkt. 230 (Minute Entry for May 8 Hearing).

Compensating Plaintiff for this time is justified given that Defendants' appeal was particularly flimsy—indeed, it was offered without citation to any caselaw. *See* Dkt. 191. And, as Judge Urbanski noted when overruling Defendants' objections and affirming this Court's sanctions order in full, Defendants misunderstood this Court's order and raised no new arguments. Dkt. 231 at 14-15. Despite the baselessness of Defendants' appeal, Plaintiff was forced to respond and therefore to expend additional time as a result of Defendants' nondisclosure. Courts in this circuit, including this Court, regularly grant sanctions that include the time spent on drafting briefs and preparing for arguments as a result of a party's discovery violation. *See, e.g.*, *Sines*, 2020 WL 2736434 (awarding sanctions for nearly 170 hours spent briefing a sanctions motion and preparing for argument on the same); *VT Milcom, Inc.*, No. 5:16-CV-00007, ECF No. 81 at 5-6 (awarding sanctions that included 8.2 hours of time drafting discovery motions and 3 hours of time to prepare for a hearing on the discovery motion).

Accordingly, Plaintiff's petition for reimbursement for just 6.8 hours of time to respond to Defendants' objections in writing and at oral argument is reasonable.

In sum, because the time and labor that Plaintiff expended was warranted, this *Johnson* factor supports Plaintiff's requested fee award.

2.   *This discovery dispute raised novel and difficult questions.*

Although as a general matter a failure to disclose information may not seem particularly novel, the instant situation is, in fact, unusual. There is little precedent for what transpired in this case, where Defendants: were aware of and spoke with a potential witness, one who was specifically responsive to Plaintiff's discovery requests; withheld the witness's identity during a series of depositions of individuals with precisely the same type of relevant information; subsequently produced a cache of materials that confirmed the witness's identity; and then dodged Plaintiff's attempts to engage on the subject. Dkt. 98 at 2-8 (detailing facts and documents supporting award of sanctions). Plaintiff had to deduce the nondisclosure from Defendants' documents without their cooperation, and only after wading through this informational asymmetry was Plaintiff able to determine that an additional deposition would be necessary. *See, e.g.*, *Id.* at 12 (discussing how Plaintiff determined that Juan Torres was not an "Officer in Charge" at the time of Plaintiff's transport because he had been employed for only a few months, and thus, based on Defendants' documents, could not have been the Torres who drove Plaintiff). Whatever the motivation for this conduct, the sequence of events was anything but routine, and the question of the appropriate and necessary remedies to compensate Plaintiff for the harm inflicted by Defendants' nondisclosure was a complex one that required legal research. Accordingly, this *Johnson* factor supports the fees and costs requested. *Sines*, 2020 WL 2736434, at *9 ("While 'the issues related to Defendants' noncompliance . . . were not

particularly novel, they also were not routine'" (quoting *Victor Stanley, Inc. v. SCH Enter.*, No. RDB-06-2662, 2019 WL 3841932, at *2 (D. Md. Aug. 14, 2019))).

   *3.   The legal services performed required skill.*

It took legal skill to navigate the above-described non-routine situation. As mentioned above, Plaintiff's counsel had to master Defendants' own documents and internal hierarchy in order to determine the proper witness. Given Defendants' claimed confusion about who drove Plaintiff's transport, Plaintiff's ability to reach clarity on this topic without Defendants' cooperation is evidence of the care and skill that Plaintiff has devoted to this matter. Plaintiff brought similar dedication to the motion for sanctions and the following appeal to Judge Urbanski. Accordingly, this *Johnson* factor supports the fees that Plaintiff seeks. *Victor Stanley*, 2019 WL 3841932, at *4 (finding that *Johnson's* skill factor supported sanctions based on the briefs and arguments that "assisted the Court in sorting through the issues in dispute").

   *4.   Plaintiff Is Applying the Customary Fee for Like Work in This Jurisdiction*

In seeking an award of attorneys' fees, Plaintiffs bear the burden of "produc[ing] specific evidence of the 'prevailing market rates in the relevant community' for the type of work" performed. *Depaoli v. Vacation Sales Assocs., L.L.C.*, 489 F.3d 615, 622 (4th Cir. 2007) (quoting *Spell v. McDaniel*, 824 F.2d 1380, 1402 (4th Cir. 1987)). "Typically, this means an attorney will demonstrate the market rate for services in the geographic jurisdiction of the litigation." *Newport News Shipbuilding & Dry Dock Co. v. Holiday*, 591 F.3d 219, 227 (4th Cir. 2009) (citation omitted).

Plaintiff seeks fees for time expended by Ms. Miller, whose hourly rate was $450 at the time of the work at issue. *See* Miller Decl. ¶ 15. This rate is reasonable in the Washington D.C. area in which Ms. Miller's office is based. *See* Ex. C (Declaration of Christine Webber) ¶ 7. At

Ms. Miller's customary billing rate, the fees for the time spent in connection with Defendants' discovery violation is $7,065. That said, for purposes of this fee petition, Plaintiff seeks only $4,317.50 in fees for the hours sought, which is equivalent to the prevailing market rates in Western Virginia (which are substantially lower than the prevailing Washington D.C. market rates normally received by Plaintiff's counsel).[5] More specifically, the hourly value of the fees sought for Ms. Miller's time amounts to $275. This rate is in line with rates that courts in this jurisdiction have deemed appropriate for attorneys of Ms. Miller's skill and experience (as outlined in the following section). *See Quesenberry v. Volvo Grp. N. Am., Inc.*, 2010 WL 2836201, at *12 (W.D. Va. 2010) (awarding $275 per hour for associates with more than three years of experience); *VT Milcom, Inc.*, No. 5:16-CV-00007, ECF No. 81 at 5 (awarding $275 per hour for less experienced attorneys, as requested in Pl.'s Br. Ex. A, ECF No. 75-1); *Three Rivers Landing of Gulfport, LP v. Three Rivers Landing, LLC*, No. 7:11–cv–00025, 2014 WL 1599564, at *3 (W.D. Va. Apr. 21, 2014) (calculating a blended hourly rate using $275 for an associate with six years of experience and a $500 for partners); *see also McAfee*, 738 F.3d at 91 (affirming an Eastern Virginia fee award that included a rate of $365 per hour for an associate). Accordingly, Plaintiff's requested lodestar after reductions made by counsel for purposes of this fee petition is equivalent to the market rates in this jurisdiction, notwithstanding the higher hourly rates that Plaintiff's counsel would normally receive for the type of work undertaken here.

   *5. Plaintiff's Counsel Is Able and Experienced*

Together with local counsel, Plaintiff is represented by Relman Colfax PLLC, a Washington D.C. boutique litigation firm whose attorneys have extensive experience litigating

---

[5] Plaintiff reserves the right to request fees that they would be awarded at the actual rates of their counsel and paralegals in future fee applications in this case.

civil rights issues in federal and state court at both the trial and appellate level. Since its inception over two decades ago, Relman Colfax has represented clients in systemic litigation against private companies and municipalities. Miller Decl. ¶ 4. Relman Colfax has also represented individuals in claims arising from the deprivation of constitutional rights. As set forth in her declaration, Ms. Miller has significant prior experience in complex and civil rights litigation. *Id.* ¶¶ 3-4.  Ms. Miller spent two years clerking for federal courts at the district and circuit levels. *Id.* ¶ 3. She has also litigated nationwide class action cases under Title VII of the Civil Rights Act, tried systemic claims of reverse redlining under the Fair Housing Act, and briefed and argued many dispositive and discovery motions. *See* Miller Decl. ¶ 4. Accordingly, this *Johnson* factor supports Plaintiff's lodestar.

6. *Plaintiff Requests a Reasonable Amount of Fees Compared to Awards in Similar Cases.*

The $4,317.50 in fees that Plaintiff seeks as sanctions for Defendants' discovery violation are also reasonable in light of other sanctions awards in this district. *See, e.g.*, *Sines*, 2020 WL 2736434, at *13 (awarding $41,300.00 as sanctions for defendants' failure to obey discovery orders); *VT Milcom*, No. 5:16-CV-00007, ECF No. 82 (affirming this Court's recommendation of $16,984.00 in fees arising from a motion to compel and a motion for show cause order); *Nationwide Prop.*, 2015 WL 7302443, at *2 (awarding $29,310.00 in fees and expenses arising from discovery motions); *Scott v. Clarke*, 2014 WL 1463755, at *6 (awarding $15,980 in expenses and fees incurred in the preparation and filing of a motion to compel). Indeed, Plaintiff seeks significantly less than the sanctions awarded in the foregoing cases, reflecting his deliberate effort to make a conservative and reasonable request. Accordingly, this *Johnson* factor—along with the other *Johnson* factors relevant to a request for fees for a discovery violation—also favors granting Plaintiff's fee petition in full.

13

B.      Plaintiff's Lodestar Is Reasonable and Should Not Be Reduced

After calculating the lodestar using the *Johnson* factors—a calculation that "enjoys a strong presumption of reasonableness," *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010)—courts next evaluate whether to "subtract fees for hours spent on unsuccessful claims unrelated to successful ones," *McAfee*, 738 F.3d at 88. Only "in those rare circumstances where the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee" is this presumption overcome. *Nationwide Prop.*, 2015 WL 7302443, at *2 (citing *McAfee*, 738 F.3d at 88). Here, because Plaintiff prevailed on his motion for sanctions before this Court and Judge Urbanski, there is no basis to reduce the lodestar. *Nationwide*, 2015 WL 7302443, at *2 (declining to reduce lodestar where the moving party prevailed on the discovery motions at issue); *VT Milcom, Inc.*, No. 5:16-CV-00007, ECF No. 81 at 7 (same).

C.      There Is No Other Basis for Adjustment of the Lodestar

At the third step, the court must consider an adjustment of "some percentage" of the lodestar "depending on the degree of success enjoyed by the plaintiff." *McAfee*, 738 F.3d at 88. As this Court has explained, "adjustments made at this step concern whether to increase the award because the lodestar figure is deemed insufficient to compensate the prevailing party based on its success." *VT Milcom, Inc.*, No. 5:16-CV-00007, ECF No. 81 at 4. Although Plaintiff succeeded not only on its motion for sanctions but also on all three dispositive motions to date, Plaintiff is not seeking an enhancement of the lodestar amount. Rather, the full lodestar amount is the appropriate award.

D.    <u>Plaintiff's Costs Are Reasonable and Supported by Documentation</u>

In addition to the reasonable fees described above, Plaintiff is seeking reimbursement for the costs attendant to Juan Torres's deposition and for the additional travel costs incurred for the deposition of Ismael Torres. Dkt. 170 at 7 ("Kovari is entitled to recover the reasonable expenses, including attorney's fees, incurred in preparing for and taking Juan's deposition."); *id.* ("Kovari is entitled, however, to the transportation costs between Orlando, where the deposition occurred, and Melbourne, Florida, where the van was inspected, as well as the cost of an extra night's stay in Florida."); *see also* Dkt. 231 (affirming this Court's sanctions order). Plaintiff has submitted invoices for the costs of subpoenaing Juan Torres, paying a court reporter during the deposition of Juan Torres, renting a car to drive between Orlando and Melbourne for the deposition of Ismael Torres, and spending an extra night in Florida for the deposition of Ismael Torres. This documentation supports Plaintiff's request for $1583.14 in costs.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court award Plaintiff $4,317.50 in fees and $1583.14 in costs to be remitted to counsel for Plaintiff within ten days of the date of the Court's order.

Dated: July 2, 2020                          Respectfully submitted,


                                             /s/Lila Miller
                                             Jia M. Cobb (admitted *pro hac vice*)
                                             Lila Miller (admitted *pro hac vice*)
                                             RELMAN COLFAX PLLC
                                             1225 19th Street NW, Suite 600
                                             Washington, DC 20036
                                             Tel: (202) 728-1888
                                             Fax: (202) 728-0848
                                             jcobb@relmanlaw.com
                                             lmiller@relmanlaw.com

                                             Jeffrey E. Fogel, VSB #76345
                                             Attorney at Law
                                             913 E. Jefferson Street
                                             Charlottesville, VA 22902
                                             Tel: (434) 984-0300
                                             Fax: (434) 220-4852
                                             jeff.fogel@gmail.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 2nd day of July 2020, a copy of the foregoing Plaintiff's

Motion for Reasonable Fees and Costs was filed on the CM/ECF system for the Western District

of Virginia, which will send notification of such filing to all counsel of record.


<u>/s/ Lila Miller  </u>
Lila Miler
*Attorney for Plaintiff*

17